Lance L. Milne (14879)
Christopher J. Cheney (15572)
Joshua S. Ostler (14277)
MORTENSEN & MILNE
68 S. Main Street, Suite 700
Salt Lake City, Utah 84101
(801) 521-4444
ccheney@mortmilnelaw.com
lmilne@mortmilnelaw.com
jostler@mortmilnelaw.com
*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| LATA and PELITISASA TAHI, individually and on behalf of the ESTATE OF PAUL TAHI, deceased; RACHEL AND KEITH LEOTA, individually and on behalf of the ESTATE OF TIVANI LOPATI, deceased;<br><br>   Plaintiffs,<br><br>v.<br><br>GRANITE SCHOOL DISTRICT; JOHN and JANE DOEs 1-10;<br><br>   Defendants. | **COMPLAINT**<br><br>**(JURY DEMANDED)**<br><br>Case No.: 2:24-cv-0026<br><br>Judge: |

Plaintiffs Lata and Pelitisasa Tahi and Rachel and Keith Leota, on their own behalf and on behalf of the Estates of Paul Tahi and Tivani Lopati, hereby complain against the above-named Defendants as follows:

### NATURE OF ACTION

1. This is a civil rights action involving the tragic, avoidable, and untimely deaths of

1

Paul Tahi and Tivani Lopati, high-school students at Hunter High School, who were shot and killed by a fellow classmate during school hours.

2. Paul and Tivani's murder occurred as a direct result of Defendants' neglect and refusal to respond to multiple reports of escalating and imminent violence in violation of Title VI of the Civil Rights Act and the Fourteenth Amendment of the United States Constitution.

## PARTIES

3. Plaintiff Paul Tahi, now deceased, was at all times pertinent hereto a resident of Salt Lake County, State of Utah.

4. Plaintiff Lata Tahi is and was at all times relevant hereto a resident of Salt Lake County, State of Utah, and was the natural parent of Plaintiff Paul Tahi.

5. Plaintiff Pelitisasa Tahi is and was at all times relevant hereto a resident of Salt Lake County, State of Utah, and was the natural parent of Plaintiff Paul Tahi.

6. Plaintiff Tivani Lopati, now deceased, was at all times pertinent hereto a resident of Salt Lake County, State of Utah.

7. Plaintiff Rachel Leota is and was at all times relevant hereto a resident of Salt Lake County, State of Utah, and was the natural parent of Plaintiff Tivani Lopati.

8. Plaintiff Keith Leota is and was at all times relevant hereto a resident of Salt Lake County, State of Utah, and was the natural parent of Plaintiff Tivani Lopati.

9. Defendant Granite School District is a school district in Salt Lake County, State of Utah.

10. Defendants John and Jane Does are individuals and employees of Granite School District.

**JURISDICTION AND VENUE**

11.     This Court has jurisdiction over the parties and subject matter of this action pursuant to, *inter alia*, 28 U.S.C. §§ 1331.

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

**GENERAL ALLEGATIONS**

13.     On January 13, 2022, at around 11:00 a.m., Paul Tahi and Tivani Lopati, minors, were shot and killed by a fellow student just outside of Hunter High School during the lunch hour (the "Shooting").

14.     According to multiple sources, two groups of Hunter High students—one composed of mostly Polynesian students, and one composed of mostly Hispanic students—had been involved in a violent and escalating dispute for nearly the entire school year.

15.     Upon information and belief, the parents of several Hunter High students had notified Hunter High School administration and the Granite School District Police on multiple occasions in the weeks and months leading up to the shooting that these groups of students were clashing, that the situation had grown violent as students were being "jumped" and/or beaten up on and off school grounds, and that the disputes were intensifying.

16.     Upon information and belief, the school administration and the school district police failed to properly investigate this information and to address the escalating violence.

17.     Specifically, upon information and belief, the school administration and the school district police failed to properly perform student discipline screens, provide student services referrals, implement student safety plans, and inform the students' parents of the situation.

18.     Because the threat of violence had become so intense, and because the school

administration and the school district police had failed to properly address and deescalate the situation, one student felt the need to bring a gun to school on the day of the shooting for his own safety and protection (the "Shooter").

19. During the school lunch hour, the two groups of students met up across the street from the school.

20. A fight broke out between the two groups, and the Shooter pulled out his gun and began opening fire on the other group of students.

21. Paul Tahi and Tivani Lopati were both fatally wounded by gunfire and a third student was seriously injured.

**FIRST CAUSE OF ACTION**
**Violation of Title VI**
**(Against Defendant Granite School District)**

22. Under 42 U.S.C. § 2000d, Title VI of the Civil Rights Act of 1964, "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

23. At all times relevant, Granite School District received federal financial assistance, and is subject to and required to comply with Title VI of the Civil Rights Act of 1964.

24. Paul Tahi was a Polynesian student, attending Granite School District, and was entitled to the protections provided under the Civil Rights Act of 1964.

25. Tivani Lopati was a Polynesian student, attending Granite School District, and was entitled to the protections provided under the Civil Rights Act of 1964.

26. Granite School District had a legal duty to provide a nondiscriminatory educational

environment for its students, like Paul Tahi.

27.     Granite School District had actual knowledge of racially-charged harassment and discrimination toward Polynesian students at Hunter High School that was severe, pervasive, and objectively offensive.

28.     Granite School District was deliberately indifferent to known acts of student-on-student racial harassment and discrimination; it chose to sit by and do nothing.

29.     The resulting hostile environment deprived Paul Tahi and Tivani Lopati of equal access to the educational benefits and opportunities provided by Granite School District, which were enjoyed by their non-Polynesian classmates.

30.     The resulting racially-based hostile environment resulted in Paul Tahi and Tivani Lopati's murders.

## SECOND CAUSE OF ACTION
**Violation of Equal Protection Under the Fourteenth Amendment - 42 U.S.C. § 1983**
**(Against the Individual Defendants)**

31.     The Fourteenth Amendment to the United States Constitution provides that "[n]o state shall … deny to any person within its jurisdiction the equal protection of the laws."

32.     Individual Defendants had a duty to respond to reports and known instances of racially-charged harassment and discrimination against Polynesian students, like Paul Tahi and Tivani Lopati.

33.     Individual Defendants exercised discretion when they decided how they would respond to reports and known instances of racially-charged harassment and discrimination.

34.     In choosing how to respond to reports and known instances of racially-charged harassment and discrimination, Individual Defendants were acting as school administrators and

state employees and were clothed with the authority of state law.

35. On information and belief, Individual Defendants determined how to exercise their discretion based on race and racial stereotypes.

36. Individual Defendants classified Paul Tahi and Tivani Lopati by their race and engaged in differential treatment that violated Paul's and Tivani's rights to equal protection under the Fourteenth Amendment of the United States Constitution.

37. Individual Defendants acquiesced in, and were deliberately indifferent to, reports and known instances of racially-charged harassment and discrimination against Paul Tahi and Tivani Lopati.

38. Individual Defendants' classification of and differential treatment towards Paul Tahi and Tivani Lopati on the basis of race were not substantially related to achieving an important government interest.

39. The deprivation of equal protection to Paul Tahi and Tivani Lopati left them vulnerable to racial discrimination, harassment, and violence, indicating that Individual Defendants facilitated and/or condoned a racially hostile environment.

40. The deprivation of equal protection to Paul Tahi and Tivani Lopati proximately caused and culminated in Paul Tahi's and Tivani Lopati's murders and permanent deprivation of their access to education.

41. Plaintiffs otherwise suffered additional harm and incurred damages as a result of the deprivation of equal protection.

**THIRD CAUSE OF ACTION**
**Violation of Equal Protection Under the Fourteenth Amendment – 42 U.S.C. § 1983**
**(Failure to Train or Supervise)**
**(Against John/Jane Doe)**

42. At all times relevant hereto, John/Jane Doe was an administrator who had final policymaking authority by way of his/her official capacity who was acting under color of state law and who, on information and belief, engaged in policy making to supervise and control all policies, practices, rules, guidelines, customs and regulations regarding Granite School District and its interaction with students.

43. John/Jane Doe had duties to train, supervise, control, instruct, and discipline subordinates with regard to, among other things, issues regarding race-based discrimination, treatment based on racial stereotypes, and responses to reports and known incidents of racially-charged discrimination, harassment, and violence.

44. John/Jane Doe had a duty to provide training that was necessary to ensure that subordinates would: recognize reports and incidents of racial discrimination/harassment; assess the degree of risk associated with such reports and incidents; respond to such reports and incidents in an appropriate manner; know when a response or lack thereof violated Title VI and/or the Equal Protection Clause; understand the rights, remedies, requirements and obligations under these provisions of federal law; and understand the risks and consequences associated with violating these provisions of federal law.

45. John/Jane Doe had a duty to provide training that was necessary to ensure that subordinates would: recognize common gender stereotypes; learn to set aside personal bias while acting under color of state law; understand that treatment based on racial stereotypes violates the Constitution; and understand the risks and consequences associated with treatment based on racial

stereotypes.

46. John/Jane Doe had a duty to supervise, control and instruct subordinates to ensure that they were not deliberately indifferent to reports of racial discrimination/harassment, that they were not treating students based on racial stereotypes and that they were otherwise conducting themselves in accordance with their Granite School District policies and procedures.

47. John/Jane Doe had a duty to provide timely and appropriate discipline when subordinates acted with deliberate indifference to reports of racial discrimination/harassment, when they treated students based on racial stereotypes, when they otherwise failed to conduct themselves in accordance with their training, and/or when they violated Granite School District policies and procedures.

48. John/Jane Doe knew or should have known that subordinates had an unconstitutional custom or policy of deliberate indifference to reports of racial discrimination/harassment and/or an unconstitutional custom or policy of treating students based on racial stereotypes but failed to respond to the custom or policy with further training, supervision, control, instruction or discipline.

49. John/Jane Doe knew or should have known that subordinates who were not adequately trained, supervised, controlled, instructed or disciplined were likely to respond to reports of racial discrimination/harassment with deliberate indifference and/or to treat students based on racial stereotypes and the risk in that regard was a plainly obvious consequence of the failure to train, supervise, control, instruct, or discipline subordinates in the specific manner set forth above.

50. John/Jane Doe knew or should have known that subordinates in the Granite School

District would confront racial discrimination/harassment with regularity, thereby implicating students' Constitutional and federal rights.

51. Despite knowledge that subordinates needed training, supervision, control, instruction and discipline, John/Jane Doe was deliberately indifferent to the need to train, supervise, control, instruct, or discipline subordinates and/or the need to provide more or better training, supervision, control, instruction, and discipline for subordinates.

52. John/Jane Doe's subordinates treated Paul Tahi in accordance with the unconstitutional custom and policy of deliberate indifference to reports of racial discrimination/harassment and in accordance with the unconstitutional custom or policy of treating students based on racial stereotypes.

53. The failures to train, supervise, control, instruct, or discipline subordinates, as set forth above, otherwise caused subordinates to be deliberately indifferent to reports of racial discrimination/harassment and caused them treat Paul Tahi based on racial stereotypes, resulting in injury and damages.

54. Through their failure to train, supervise, control, instruct, or discipline subordinates, John/Jane Doe had a policy, practice, and custom of deliberate indifference to the rights of students like Paul Tahi and Tivani Lopati and of treating students like Paul Tahi and Tivani Lopati based on racial stereotypes. The lack of training left subordinates unequipped to prohibit or discourage readily foreseeable conduct, despite the clearly-established and well-known dangers of racial discrimination/harassment. As a result, John/Jane Doe subjected Paul Tahi and Tivani Lopati to the deprivation of their constitutional right to equal protection under the Fourteenth Amendment and of their federal civil rights under Title VI.

55. John/Jane Doe's failure to train, supervise, control, instruct or discipline subordinates effectively deprived Paul Tahi and Tivani Lopati of their clearly established constitutional rights and was deliberate, reckless and in callous indifference to such rights.

56. To the extent that subordinates obtained knowledge in the course and scope of their agency and/or employment, such knowledge is imputed to John/Jane Doe.

57. John/Jane Doe are independently liable for the actions that they took or failed to take in light of the knowledge that was imputed to them through their subordinates.

### FOURTH CAUSE OF ACTION
**Violation of Equal Protection Under the Fourteenth Amendment – 42 U.S.C. § 1983**
**(Unconstitutional Policy or Custom)**
**(Against John/Jane Doe)**

58. John/Jane Doe promulgated, created, implemented, maintained and/or were responsible for unconstitutional policies or customs that required or encouraged subordinates to respond to reports of racial discrimination/harassment with deliberate indifference and/or to treat students based on racial stereotypes.

59. John/Jane Doe violated Paul Tahi's and Tivani Lopati's right to equal protection when they promulgated, created, implemented, maintained and/or were responsible for these unconstitutional policies or customs and when their subordinates treated Paul and Tivani in accordance with these unconstitutional policies or customs.

60. Alternatively, John/Jane Doe had duties to promulgate, create, implement, maintain, and enforce policies regarding, among other things, racial discrimination, treatment based on racial stereotypes, and reports of racial harassment/discrimination.

61. John/Jane Doe knew or should have known that subordinates had an unconstitutional custom of responding to reports of racial discrimination/harassment with

deliberate indifference and of treating minorities like Paul Tahi and Tivani Lopati based on racial stereotypes.

62. John/Jane Doe knew or should have known that a failure to promulgate, create, implement, maintain or enforce policies necessary to ensure that subordinates understood their obligations when responding to reports of racial discrimination/harassment was likely to result in deliberate indifference to reports of racial discrimination/harassment and in treatment based on racial stereotypes and the risk in that regard was a plainly obvious consequence of the failure to promulgate, create, implement, maintain or enforce policies.

63. Despite knowing that they needed to promulgate, create, implement, maintain, and enforce policies to ensure that subordinates clearly understood their obligations, John/Jane Does were deliberately indifferent to the need to promulgate, create, implement, maintain and enforce policies and/or to the need to update or revise policies.

64. To the extent John/Jane Doe in fact implemented policies, they undermined such policies by consciously acquiescing in contrary customs and by failing to enforce the policies.

65. Subordinates treated Paul Tahi and Tivani Lopati in accordance with the unconstitutional custom of deliberate indifference to reports of racial discrimination/harassment and in accordance with the unconstitutional custom of treating students based on racial stereotypes.

66. The failure to promulgate, create, implement, or enforce policies as set forth above otherwise caused subordinates to be deliberately indifferent to reports of racial harassment/discrimination and caused them to treat Paul Tahi and Tivani Lopati based on racial stereotypes, resulting in injuries and damages.

### FIFTH CAUSE OF ACTION
### Wrongful Death
### (Against All Defendants)

67. The violation of Title VI and the deprivation of Paul Tahi's and Tivani Lopati's right to equal protection under the Fourteenth Amendment were wrongful acts that caused Paul's and Tivani's deaths.

68. Pursuant to Utah Code § 78B-3-106, Paul Tahi's and Tivani Lopati's heirs have a cause of action against Defendants for wrongful death associated with Paul's and Tivani's underlying claims for violation of Title VI and violation of the Equal Protection Clause of the Fourteenth Amendment.

69. Paul Tahi's and Tivani Lopati's heirs are entitled to general and special damages for, among other things, costs associated with Paul's and Tivani's death, the value of services Paul and Tivani would have provided, loss of Paul's and Tivani's society, comfort, association, love, counsel, care, consortium and protection, loss of the reasonable expectation to associate with Paul and Tivani for the rest of their natural life and for any and all other damages as may be just under the circumstances.

### SIXTH CAUSE OF ACTION
### Survival
### (Against All Defendants)

70. The violation of Title VI and the deprivation of Paul Tahi's and Tivani Lopati's right to equal protection under the Fourteenth Amendment were wrongful acts that caused Paul's and Tivani's death.

71. Pursuant to Utah Code § 78B-3-107, the estate of Paul Tahi and Tivani Lopati have a cause of action against Defendants for their violations of Title VI and/or the Equal Protection

Clause of the Fourteenth Amendment and is entitled to general and special damages and for any and all other damages as may be just under the circumstances.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand a judgment in their favor against Defendants and pray for the following relief:

1. For compensatory damages;

2. For consequential damages;

3. For punitive damages in an amount to be determined by a jury;

4. For all costs of litigation and attorneys' fees; and

5. For such other relief as the Court deems just and proper.

DATED this 11th day of January 2024.

MORTENSEN & MILNE

/s/ *Christopher J. Cheney*
Christopher J. Cheney
Lance L. Milne
Joshua S. Ostler
*Attorneys for Plaintiffs*